Argued and submitted September 9, affirmed October 26, 1994, petition for review denied February 7, 1995 (320 Or 567)

# MUTUAL OF ENUMCLAW INSURANCE COMPANY,
a Washington corporation,
*Respondent,*

*v.*

# Veryl KEY
and Dale W. Key,
*Appellants.*

(93C11582; CA A82522)

883 P2d 875

J. Michael Alexander argued the cause for appellants. With him on the briefs was Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C.

William G. Earle argued the cause for respondent. With him on the brief was Hallmark, Keating & Abbott, P.C.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Defendants appeal from a summary judgment for plaintiff that declared the maximum amount of underinsured motorist benefits potentially available to defendants under a policy issued by plaintiff. We affirm.

Defendants, Veryl and Dale Key, were seriously injured in an automobile collision. The tortfeasor's insurance policy had liability limits of $100,000 per person and $300,000 per accident. Defendants' insurance policy, issued by plaintiff, provides uninsured/underinsured (UM/UIM) motorist protection with a liability limit of $300,000 per accident, which is known as a "single-limit" policy. Veryl settled with the tortfeasor's insurer for that policy's per person limit of $100,000. Dale's claim against the tortfeasor is still pending.

Plaintiff sought a declaratory judgment regarding the amount of UIM benefits available to defendants. Plaintiff and defendants each filed a motion for summary judgment. The trial court granted plaintiff's motion and denied defendants'. It held that the terms of the UM/UIM policy meet the minimum statutory requirements in ORS 742.504(7) and that the policy unambiguously limits total UIM benefits to $300,000, less any amounts recovered by both defendants from the tortfeasor's insurer.

Defendants first contend that, under their insurance policy and ORS 742.504(7)(c)(A), each individual's UM/UIM benefits should be reduced only by amounts that that individual defendant received from the tortfeasor's insurer, not by the total amount that defendants together received from that insurer. According to defendants, they should be allowed to recover a total of $500,000 ($100,000 per person from the tortfeasor's liability coverage, plus $300,000 from their UIM coverage). Plaintiff argues that defendants are entitled to a total recovery from all sources of no more than $300,000.

Defendants' argument reveals a misunderstanding of single-limit policies. A single-limit policy providing $300,000 of coverage is essentially a split-limit policy with limits of $300,000 per person and $300,000 per accident. The effect of defendants' interpretation would be to disregard the "per accident" liability limit of their single-limit policy and to

"stack" UM/UIM coverage on top of the tortfeasor's liability coverage. Defendants' UM/UIM policy unequivocally limits plaintiff's liability to the single-limit coverage, less all sums received from the tortfeasor's insurer.[1]

The terms of defendants' policy are consistent with the applicable statutory requirements for UM/UIM coverage. Those statutes mandate that, when UM coverage exceeds the minimum financial responsibility requirements of ORS 806.070,[2] insurers must provide UIM coverage with benefits that are "equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies." ORS 742.502(2)(a). ORS 742.504 requires insurers to provide UM coverage that meets or exceeds its "floor" requirements.[3] When read together, ORS 742.502-(2)(a) and ORS 742.504 authorize liability limitations that

---

[1] The policy provides, in part:

"C. **OUR** LIMIT OF LIABILITY.

"1. *Regardless of the number of covered* **cars**, **insureds**, claims made or vehicles *involved in the* **accident** or premiums shown on the Coverage Page, *the most* **we will pay for** **bodily injury** *resulting from any one* **accident** is the Uninsured Motorist limit shown for the covered **car** on the Coverage Page.

"2. *Any amounts otherwise payable for damages under this coverage will be reduced by*:

"a. *All sums paid because of* **bodily injury** by or *on behalf of persons or* organizations *who may be legally responsible*." (Boldface in original; emphasis supplied.)

[2] ORS 806.070(2) provides that $25,000 per person and $50,000 per accident are the minimum requirements for liability coverage for bodily injury.

[3] ORS 742.504(7) provides, in part:

"(a) The limit of liability stated in the declarations as applicable to 'each person' is the limit of the insurer's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, *the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of one accident.*

"* * * * *

"(c) Any amount payable under the terms of this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:

"(A) All sums paid on account of such bodily injury by or on behalf of the owner or operator of the uninsured vehicle and by or on behalf of any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the bodily injury liability coverage of the policy[.]" (Emphasis supplied.)

are identical to the policy written by plaintiff. UIM coverage is intended to place a policy holder in the same position that the policy holder would have been in if the tortfeasor had had liability coverage equal to the amount of the UM/UIM coverage. *See Peterson v. State Farm Ins. Co.*, 238 Or 106, 111-12, 393 P2d 651 (1964) (the basic purpose of UM is to protect policy holder against risk of inadequate compensation for injuries caused by financially irresponsible tortfeasor, *i.e.*, to place policy holder in same position as if tortfeasor had liability insurance); *see also Yokum v. Farmers Ins. Co.*, 117 Or App 546, 548, 844 P2d 937, *rev den* 317 Or 272 (1993) (to the extent UM limit exceeds tortfeasor's coverage, it is considered UIM). Therefore, defendants' argument fails. UIM benefits available to each defendant are subject to the policy's single limit and are reduced by all amounts paid by the tortfeasor's insurer.

Defendants also argue that sums received from the tortfeasor's insurance carrier are intended to reduce defendants' actual damages rather than the limits of plaintiff's liability. We have previously considered and rejected that argument. "UIM limits are reduced dollar for dollar by the amounts recovered from the tortfeasor's insurer." *Yokum v. Farmers Ins. Co., supra*, 117 Or App at 549; *see American Economy Ins. Co. v. Canamore*, 114 Or App 348, 352-53, 834 P2d 542, *rev den* 314 Or 727 (1992); *see also California Casualty Indemnity Exchange v. Maritzen*, 123 Or App 166, 170-71, 860 P2d 259, *rev den* 318 Or 97 (1993). The phrase, "[a]ny amounts otherwise payable for damages under this coverage will be reduced by," means that the reduction must be from "amounts payable" under the policy, not from "damages." *See American Economy Ins. Co. v. Canamore, supra*, 114 Or App at 352-53.[4] Defendants cannot create ambiguity in a phrase that has one reasonable meaning merely by suggesting a remotely plausible alternative.

---

[4] The pertinent language in the UM/UIM policies at issue in *Canamore* and in this case are substantially the same. In *Canamore*, the insurer's liability was limited by the following provisions in the policy:

"Any amount payable under this [UM/UIM] coverage shall be reduced by:

"* * * * *

"b. All sums paid by or for anyone who is legally responsible * * *." 114 Or App at 352.

*Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992).

Affirmed.