953 P.2d 578

K. Glen ALLEN and Louise O. Allen, husband and wife, Plaintiffs–Appellants,

v.

BLAINE COUNTY, a body politic and corporate of the State of Idaho, and the Board of County Commissioners of Blaine County, Defendants–Respondents.

No. 23218.

Supreme Court of Idaho, Pocatello, September 1997 Term.

Feb. 4, 1998.

Clinton E. Jacob and James L. Kennedy, Jr., Ketchum, for plaintiffs-appellants. James L. Kennedy, Jr. argued.

Douglas A. Werth, Blaine County Prosecuting Attorney, Hailey, for defendants-respondents. Douglas A. Werth argued.

SCHROEDER, Justice.

Glen and Louise Allen (the Allens) appeal from the decision of the district court granting summary judgment in favor of Blaine County and the Board of County Commissioners (County) holding: (1) that the term "owner," as used in Idaho's platting statutes, does not include a leasehold interest, and (2) that, therefore, Blaine County can enforce restrictions in a subdivision plat recorded by the title owners of the real property despite the fact that the Allens, who were lessees of property in the subdivision, had not signed or consented to the recording of the plat.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The Allens are lessees of real property in Blaine County, Idaho, holding their interest pursuant to a written lease dated January 1, 1978, modified by a written addendum dated October 1, 1991. Legal title to the property is vested in Board's Mill and Sunset Ranches, Inc. (Board's Mill). The lease agreement between the Allens and Board's Mill allows renewals which may extend the lease for a term not to exceed fifty (50) years. The Allens do not have an option to purchase the property. The lease describes the property by metes and bounds and includes land that is presently comprised of lots 24A and 24B.

On December 1, 1989, Board's Mill obtained the County's approval to file a plat entitled "Board's Lower Ranch." The plat designates lot 24B, which is a portion of the Allens' leased property, as a "non-buildable lot." The plat was signed by a representative of Board's Mill but was not signed by the Allens. Legal notice was published in the Wood River Journal relating to all public hearings held regarding the plat, but the Allens did not receive personal notice of the proceedings and were unaware of the recording of the plat.

Idaho Code section 50–1302, which was applicable at the time, provided that "[e]very owner proposing a subdivision ... shall cause the same to be surveyed and a plat made thereof ... and shall record said plat." I.C. § 50–1302 (1988). Section 50–1301(3) [1] of the Idaho Code defined owner as "[t]he proprietor of the land, (having legal title)." I.C. § 50–1301(3) (1988). The Allens maintain that, at the time the plat was recorded, they were owners as a consequence of their long-term leasehold interest and that the plat restrictions affecting the property in which they have an interest are not valid since they did not receive notice of the proceedings and did not sign the plat.

On October 1, 1991, the Allens and Board's Mill entered into a settlement agreement with Board's Mill whereby Board's Mill consented to and approved the Allens' application to begin construction of certain improvements on their leased property, and the Allens' partial assignment of their lease concerning lot 24B to Geoffrey Parker which was made under a prior written lease assignment, dated July 12, 1991. Any dispute the Allens may have had with Board's Mill relating to the recording of the plat without the Allens' consent or approval is not before this Court. This case concerns only the dispute between the Allens and Blaine County which arose when the Allens submitted an application to the County for approval to build a rental home on their leased property. The County applied the plat restrictions to the property, including the "non-buildable lot" restriction on lot 24B, and denied the Allens' application.

The Allens filed a complaint requesting judicial review of the County's denial of their application pursuant to the Idaho Adminis-

---

1. I.C. § 50–1301 has been amended and the defi-   nition of owner now appears at § 50–1301(5).

trative Procedure Act and a declaratory judgment under the Uniform Declaratory Judgment Act, declaring the plat restrictions null and void as applied to them and their assignee. As to their claim for judicial review, the Allens alleged that imposing the plat restrictions upon them deprived them of a present possessory interest in the property without just compensation, asserting that the restrictions arose only after the acquisition of their leasehold interest and without their consent. Further, they alleged that the County's denial of their application was arbitrary and capricious, without support in the record, not supported by the evidence, in excess of the County's authority, and an abuse of discretion. As to their claim for a declaratory judgment, the Allens alleged that the plat restrictions were void as to them and their assignee because such restrictions had arisen outside their chain of title and without their consent. The Allens moved for summary judgment, supporting the motion with their affidavits and the affidavits of two other lessees of real property within the platted property, each asserting that they did not have notice of the plat recording or an opportunity to object or consent to the plat recording. The Allens asserted that the term "owner" as defined in I.C. § 50–1301(3) included leasehold interests, and, consequently, their consent and signatures were required before the plat restricting the use of their leased property could be validly recorded and enforced against them and their assignee.

The district court denied the Allens' motion for summary judgment and granted summary judgment for the County, holding that the legislature did not intend to include a lessee as an owner in the provision in chapter 13, title 50 of the Idaho Code, requiring that "[e]very owner proposing a subdivision" have a plat made and recorded. Consequently, the plat recorded by Board's Mill, as titleholder to the property, was validly recorded and enforceable by Blaine County against the Allens and their assignee, despite the fact that the plat was recorded absent the Allens' signature or consent. The Allens appeal this ruling.

## II.

## STANDARD OF REVIEW

■ Under the Idaho Administrative Procedure Act (IDAPA), a party who has been aggrieved by a final agency action may file a petition for review or declaratory judgment in the district court of the appropriate county after exhausting all administrative remedies. I.C. §§ 67–5270—5272. Under the IDAPA, "agency" is defined as "each state board, commission, department or officer authorized by law to make rules or to determine contested cases." I.C. § 67–5201(2). Although a county board of commissioners does not fall within this definition, a decision by a county board of commissioners is subject to judicial review "in the same manner as provided in [Idaho's Administrative Procedure Act]." I.C. § 31–1506(1). Thus, a county board of commissioners is treated as an administrative agency for purposes of judicial review. *See Intermountain Health Care, Inc. v. Board of County Comm'rs,* 107 Idaho 248, 251, 688 P.2d 260, 263 (Ct.App.1984), *rev'd on other grounds by Intermountain Health Care Inc. v. Board of County Comm'rs of Blaine County,* 109 Idaho 299, 707 P.2d 410 (1985).

■ **1. Summary Judgment:** When this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard properly employed by the district court when originally ruling on the motion. *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 200, 899 P.2d 411, 413 (1995); *Friel v. Boise City Hous. Auth.,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Mutual of Enumclaw v. Box,* 127 Idaho 851, 852, 908 P.2d 153, 154 (1995). Both this Court and the district court shall liberally construe the record in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *City of Chubbuck,* 127 Idaho at 200, 899 P.2d at 413. In this case, summary judgment was granted to the non-moving party. *See Spencer–Steed v. Spencer,* 115 Idaho 338,

345, 766 P.2d 1219, 1226 (1988) ("David was entitled to summary judgment as a matter of law on this issue, even though he had not moved for summary judgment."); *Juker v. American Livestock Ins. Co.*, 102 Idaho 644, 645, 637 P.2d 792, 793 (1981) ("Although appellant made no motion for summary judgment, where one party moves for summary judgment and the other is entitled to it, the court may grant summary judgment in favor of the non-moving party."). In this instance, the Court liberally construes the record in favor of the party against whom summary judgment was entered.

■ **2. Agency Review:** On appeal, this Court reviews agency decisions directly, independent of the district court's determination. *Willig v. Idaho Dep't of Health & Welfare*, 127 Idaho 259, 261, 899 P.2d 969, 971 (1995); *Boise Group Homes, Inc. v. Idaho Dep't of Health & Welfare*, 123 Idaho 908, 909, 854 P.2d 251, 252 (1993); *Dovel v. Dobson*, 122 Idaho 59, 61, 831 P.2d 527, 529 (1992). Erroneous conclusions of law made by an agency may be corrected on appeal. *Love v. Board of County Comm'rs of Bingham County*, 105 Idaho 558, 559, 671 P.2d 471, 472 (1983).

### III.

### THE ALLENS WERE NOT OWNERS OF THE REAL PROPERTY WITHIN THE MEANING OF CHAPTER 13, TITLE 50

The plat in question was executed with a purported "owner's certificate," thus, requiring certification of "the owner or owners of the land included in said plat," pursuant to I.C. § 50–1309(1). Section 50–1301 of the Idaho Code defines "owner" as "[t]he proprietor of the land, (having legal title)." I.C. § 50–1301(3) (1988). Whether the term "owner" includes a person with a leasehold interest is a question of statutory interpretation.

■ When interpreting the meaning of statutory language, the Court is to give effect to the legislative intent and purpose of the statute. *Davaz v. Priest River Glass Co.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994) ("A construing court's primary duty is

to give effect to the legislative intent and purpose underlying a statute."); *Umphrey v. Sprinkel*, 106 Idaho 700, 706, 682 P.2d 1247, 1253 (1983) ("The principal rule governing statutory interpretation is to give effect to the legislature's intent."). "The legislature's intent in enacting a statute may be implied from the language used or inferred on grounds of policy or reasonableness." *Black v. Reynolds*, 109 Idaho 277, 280, 707 P.2d 388, 391 (1985), *overruled on other grounds by Stewart v. Rice*, 120 Idaho 504, 817 P.2d 170 (1991). Where statutory terms are ambiguous, the true meaning of the terms can be found from extraneous circumstances.

Whether leasehold interests are included within the meaning of "owner" under I.C. § 50–1301 has not been addressed by this Court. On its face the definition of "owner" as "[t]he proprietor of the land, (*having legal title*)" appears to exclude leaseholders from the status of owners. (Emphasis added). The Allens argue, however, that the holder of a lease interest has been recognized as an owner, citing to *Black's Law Dictionary*, which defines "owner" as:

> The person in whom is vested the ownership, dominion, or title of property; proprietor. He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right.
>
> . . . The primary meaning of the word as applied to land is one who owns the fee and who has the right to dispose of the property, but the term also includes one having a possessory right to land or the person occupying or cultivating it.

BLACK'S LAW DICTIONARY 996 (5th ed.1979).

■ The Allens also rely upon *Hare v. Young*, 26 Idaho 682, 689, 146 P. 104, 106 (1915), in which this Court held that a lessee of personal property was the "owner" of the property where the lessee had retained possession of the property for many years, "dealt with [the property] as his own, sold and otherwise disposed of portions of it, and

mortgaged it without objection upon the part of the lessors." The *Hare* court essentially stated the definition of "owner" as set forth in *Black's Law Dictionary*.[2] However, the dispute in *Hare* was between two private parties and involved personal property. The present case involves a dispute with a governmental entity and centers around real property. To the extent *Hare* speaks of real property, the language is dicta. More importantly, the Court in *Hare* was not dealing with a statute comparable to I.C. § 50–1301 which specifically limits the definition of owner to the proprietor "having legal title." Legal title is defined by *Black's Law Dictionary* as:

> One cognizable or enforceable in a court of law, or one which is complete and perfect so far as regards the apparent right of ownership and possession, but which carries no beneficial interest in the property, another person being equitably entitled thereto; in either case, the antithesis of "equitable title."

BLACK'S LAW DICTIONARY 807–08 (5th ed.1997).

Had the legislature intended "owner" as defined in I.C. § 50–1301(3) to include "lessee," it would have done so, as it did in section 36–1604 of the Idaho Code which sets forth the extent of a landowner's liability. Section 36–1604 defines "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." I.C. § 36–1604(b)(2). No such language is included in I.C. § 50–1301(3). Instead, the legislature restricted the definition of owner to one "having legal title," indicating that the legislature did not intend "owner" to include a "lessee." I.C. § 50–1301(3).

The district court was correct in determining that the leasehold interest held by the Allens did not make them owners of the real property for purposes of determining who must sign the subdivision plat.

## IV.

### THE BUILDING RESTRICTIONS IN THE SUBDIVISION PLAT RECORDED BY THE OWNERS ARE ENFORCEABLE AGAINST THE ALLENS BY THE COUNTY

Section 50–1309 of the Idaho Code sets forth the requirements for a valid plat executed by an owner's certificate. Pursuant to this section,

> [t]he owner or owners of the land included in said plat shall make a certificate containing the correct description of the land, with the statement as to their intentions to include the same in the plat, and make a dedication of all public streets and alleys shown on said plat, which certificate shall be acknowledged before an officer duly authorized to take acknowledgments and shall be indorsed on the plat.

I.C. § 50–1309(1) (1988).

In view of this Court's determination that the term "owner," as used in I.C. § 50–1301(3), does not include a leasehold interest, the plat in question was validly recorded and is, therefore, enforceable by the County against the Allens. Board's Mill was the owner of the property encompassed within the subdivision plat and executed the plat prior to approval by the County. Accordingly, the subdivision plat is valid and enforceable by the County as recorded, pursuant to I.C. § 50–1309, irrespective of whether the Allens consented or executed the plat.

## V.

### NO ATTORNEY FEES ARE AWARDED

■ The County seeks an award of attorney fees pursuant to I.C. § 12–121. Attorney fees under I.C. § 12–121 are not available to parties in an appeal from an agency decision because it is not "a civil action ... commenced by filing a complaint with the court." I.R.C.P. 3(a) as contemplated by I.R.C.P. 54(e)(1); *Lowery v. Board of*

2. "The owner of property is one who has dominion of a thing, real or personal, corporeal or incorporeal, which he has the right to enjoy and to do with as he pleases—either to spoil or destroy it as far as the law permits—unless he be prevented by some agreement or covenant which restrains his right." *Hare*, 26 Idaho at 689, 146 P. at 106.

*County Comm'rs for Ada County,* 117 Idaho 1079, 1081, 793 P.2d 1251, 1253 (1990).

However, under the IDAPA, a party aggrieved by a final agency action may file a petition for review or a declaratory judgment in the appropriate district court after exhausting all administrative remedies. I.C. §§ 67–5270—5272. Even if the Court were to treat the petition for a declaratory judgment as a "complaint," constituting a civil action, as contemplated by I.C. § 12–121,[3] an award of attorney fees would not be appropriate. The main issue on appeal involved the statutory interpretation of a term under chapter 13, title 50 of the Idaho Code, which this Court had not construed. The law in this area was not well settled. Accordingly, no attorney fees are awarded. *See Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979).

## VI.

### CONCLUSION

The district court's grant of summary judgment to Blaine County and the Board of Commissioners of Blaine County is affirmed. Costs are awarded to Blaine County and the Board of Commissioners of Blaine County. No attorney fees are awarded.

TROUT, C.J., and JOHNSON, SILAK and WALTERS, JJ., concur.

---

**3.** Section 12–121 of the Idaho Code states, in pertinent part, as follows:

> 12–121. Attorney fees.—In *any civil action,* the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees.

I.C. § 12–121 (emphasis added).

Idaho Rule of Civil Procedure 3(a) states that "[a] civil action is commenced by filing a complaint with the court." I.R.C.P. 3(a).